IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PREFERRED LANDSCAPE AND LIGHTING, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 15 C 1695 ) |
| JOHN ALBAN, et al., | ) ) |
| Defendants. | ) ) |
| JOHN ALBAN, et al. | ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| MILLARD PREFERRED LANDSCAPE AND LIGHTING, INC., | ) ) ) |
| Third-Party Defendant. | ) |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff/Counter-Defendant Preferred Landscape and Lighting, LLC's (Preferred), and Third-Party-Defendant Millard Preferred Landscape and Lighting, Inc.'s (Millard) motion to dismiss Counts I, III, IV, and V of the counterclaim and third-party complaint. For the reasons stated below, the partial motion to dismiss is granted in part and denied in part.

1

**BACKGROUND**

Defendants John Alban (Alban), Mark Metzger (Metzger), Darryl Cook (Cook), and Scott Wiatrek (Wiatrek) were allegedly shareholders in Renaissance Industries, Inc. (Renaissance) d/b/a Preferred Landscape and Lighting, which operated a landscaping and lighting business (Business). In December 2011, Defendants allegedly sold their interest in Renaissance to Preferred Landscape Acquisition, LLC pursuant to the terms of an Asset Purchase Agreement (Purchase Agreement). Preferred is allegedly the successor-in-interest to Preferred Landscape Acquisition, LLC, and Millard is allegedly the sole member of Preferred.

The Purchase Agreement allegedly contained non-competition agreements (Non-Competition Agreements) and non-solicitation agreements (Non-Solicitation Agreements). In addition, Defendants allegedly signed employment agreements (Employment Agreements) limiting their employment for a certain term following the sale. According to Preferred, after Defendants sold Renaissance to Preferred, in violation of the Employment Agreements, Non-Competition Agreements, and Non-Solicitation Agreements, Defendants formed a competing business and proceeded to divert customers away from Preferred and to interfere with Preferred's relationships with its vendors, customers and employees. Preferred includes in its amended complaint breach of contract claims based on an alleged breach of the Purchase Agreement (Count I), a rescission claim (Count II), breach of contract claims based on an alleged breach of the Employment Agreements (Count III), breach of contract claims based on an alleged breach of the Non-Competition Agreements (Count IV),

and Illinois Intentional Interference with Economic Advantage claims (Count V).

Defendants answered the complaint and filed a counterclaim and third-party complaint against Preferred and Millard. Defendants contend that the Purchase Agreement required Preferred to make earn-out payments to Defendants in the event that certain Earnings Before Interest, Taxes, Depreciation and Amortization (EBITDA) targets were met by Preferred. Preferred allegedly made certain decisions in order to avoid the triggering of earn-out payments. Preferred allegedly failed to adequately staff the Business and took other actions that caused the Business to operate poorly. Preferred and Millard also allegedly maintained multiple sets of financial records and did not provide accurate financial information regarding the Business to Defendants.

Defendants include in the counterclaim and third-party complaint breach of contract claims brought against Preferred and Millard based on an alleged breach of the Purchase Agreement (Count I), a breach of contract claim brought against Preferred based on an alleged breach of Alban's employment agreement (Alban Employment Agreement) (Count II), a breach of contract claim brought against Preferred based on an alleged breach of Metzger's employment agreement (Metzger Employment Agreement) (Count III), a breach of contract claim brought against Preferred based on an alleged breach of Wiatrek's employment agreement (Wiatrek Employment Agreement) (Count IV), and a breach of contract claim brought against Preferred based on an alleged breach of Cook's employment agreement (Cook Employment Agreement) (Count V). Preferred and Millard (collectively referred to

as "Moving Parties") now move to dismiss the claims brought in Counts I, III, IV, and V of the counterclaim and third-party complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I.  Breach of Purchase Agreement (Count I)

Moving Parties move to dismiss the claims in Count I of the counterclaim and third-party complaint. In the instant action, Preferred has attached the Purchase

Agreement as an exhibit to the first amended complaint, and Moving Parties have also attached the Purchase Agreement to the counterclaim and third-party complaint. The court can therefore consider the Purchase Agreement when ruling on the instant motion to dismiss. *See* Fed. R. Civ. P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

A. Parties to Purchase Agreement

Moving Parties argue that Millard was not a party to the Purchase Agreement and therefore cannot be held liable based upon such agreement. Under Illinois law, generally, "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company" and "[a] member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10(a). Moving Parties contend that Millard signed the Purchase Agreement. However, a review of the Purchase Agreement shows that Lawrence B. Kugler from Millard signed the Purchase Agreement on behalf of Preferred and not on behalf of Millard. (DE 23-1, 43). In addition, the body of the Purchase Agreement, and more specifically the introductory paragraph of the Purchase Agreement makes clear that Preferred is the Buyer and Renaissance is the Seller and that they are the parties to the Purchase Agreement, and Millard is not identified as a party to the agreement. (DE 23-1). Defendants have not pointed to any allegations in the counterclaim and third-party complaint that would suggest that Millard could be liable under the Purchase Agreement. Therefore, Moving Parties'

5

motion to dismiss the claim brought against Millard in Count I of the counterclaim and third-party complaint is granted.

### B. Arbitration Provision

Moving Parties also argue that the claims in Count I of the counterclaim and third-party complaint are barred by the arbitration clause in the Purchase Agreement. There exists a "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730-31 (7th Cir. 2005); *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773-74 (7th Cir. 2014) (stating that "the Federal Arbitration Act . . . reflects the overarching principle that arbitration is a matter of contract" and that "[a]s a general rule, courts must rigorously enforce arbitration agreements according to their terms")(internal quotations omitted)(quoting *Am. Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013)).

The Purchase Agreement provides that "[i]n the event Seller has an objection to the calculation of EBITDA with respect to a particular year, Seller shall notify Buyer of its objection." (Pur. Agr. Par. 8(d)). The Purchase Agreement further provides that "[i]f Seller and Buyer are unable to resolve any disagreement as to Seller's objection within twenty (20) days after delivery of Seller's EBITDA Objection Notice, Seller and Buyer shall jointly appoint an independent certified public accounting firm . . . as arbitrator to resolve such disagreement . . . ." (Pur.

Agr. 8(e)). Moving Parties argue that the arbitration clause is broadly written to encompass any disagreement between the parties relating to the EBITDA, and that there are allegations in the counterclaim and third-party complaint that Defendants took steps to purposefully reduce the earn-out payments and the EBITDA. However, Moving Parties, in focusing upon the phrase in the Purchase Agreement providing for arbitration for "any disagreement," fail to take into consideration the full text of that portion of the Purchase Agreement. As indicated above, the Purchase Agreement provides for arbitration regarding "any disagreement" regarding the "Seller's objection" to "the calculation of EBITDA." (Pur. Agr. 8(d)(e)). The Purchase Agreement provides a detailed description of how to calculate the EBITDA and provides that the arbitrator shall be an auditor from a certified public accounting firm. It is clear that the type of disagreement that the parties anticipated would be covered by the arbitration provision would, as the Purchase Agreement states, relate to the calculation of the EBITDA and nothing more. Such a conclusion is supported by the fact that the Purchase Agreement provides that the arbitrator is to be an auditor, which is a clear indication that it is in fact accounting issues that the arbitrator was intended to address. Such a certified public accountant would not necessarily have any expertise to assess the impropriety of conduct by Moving Parties that improperly interfered with Defendants' receipt of earn-out payments.

In the counterclaim and third-party complaint, Defendants allege that Moving Parties sought to artificially lower profits and in turn reduce the EBITDA amount. There is no suggestion that the actual calculation of the EBITDA was inaccurate or

inconsistent with the method provided for such a calculation in the Purchase Agreement. Although the Seventh Circuit has indicated that arbitration provisions should be interpreted broadly, the Seventh Circuit has also cautioned that the provisions of the Federal Arbitration Act should not be interpreted "so broadly as to include claims that were never intended for arbitration." *Cont'l Cas.*, 417 F.3d at 730-31. Moving Parties chose to enter into the Purchase Agreement, which provided arbitration concerning the calculation of EBITDA. Moving Parties cannot now rewrite the terms of the agreement to expand coverage to the claims brought in Count I of the counterclaim and third-party complaint. In the instant action, the plain language of the Purchase Agreement indicates that the parties did not intend the claims presented in Count I of the counterclaim and third-party complaint to be covered by the arbitration provision. Therefore, Moving Parties' motion to dismiss the claim brought against Preferred in Count I of the counterclaim and third-party complaint is denied.

II. Breach of Metzger Employment Agreement (Count III)

Moving Parties argue that the claim brought in Count III of the counterclaim and third-party complaint should be dismissed based on the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 839 (7th Cir. 2015)(internal quotations omitted)(quoting *Allen v. McCurry*, 449

U.S. 90, 94 (1980)). Moving Parties argues that the court can take judicial notice that Metzger filed a claim against Preferred before the Texas Workforce Commission (TWC) in which he sought the compensation that he claimed to be owed to him under the Metzger Employment Agreement. Moving Parties argue that Defendants are thus precluded from seeking relief under the Metzger Employment Agreement in this case. Defendants indicate, however, that they are only seeking to proceed in this case on an issue that the TWC declined to address. The TWC decision reflects that it addressed the amount of wages and benefits owed to Metzger under certain law and the Metzger Employment Agreement. (DE 37-7). In response to the instant motion, Moving Parties contend that Defendants are seeking certain severance wages that were not adjudicated by the TWC. However, as Moving Parties correctly point out, Defendants have not brought a claim for severance wages in this case. Defendants allege that they seek compensation "for work performed during [Metzger's] employment by Preferred." (CC&TPC Par. 61). Defendants have thus failed to identify any portion of the claim in Count III that would fall outside the scope of the TWC decision. Therefore, Moving Parties' motion to dismiss the claims in Count III is granted.

III. Breach of Wiatrek and Cook Employment Agreements (Counts IV and V)

Moving Parties argue that Preferred has not alleged sufficient facts to state a valid claim in Counts IV and V. As with the Purchase Agreement, the Wiatrek Employment Agreement and the Cook Employment Agreement, are exhibits to the

9

pleadings and can be considered when ruling on the instant motion. Moving Parties contend that in Counts IV and V, Defendants seek commissions owed to Wiatrek and Cook and that neither the Wiatrek Employment Agreement nor the Cook Employment Agreement mention commissions. Such agreements do, however, provide for certain bonuses based on percentages of sales. (DE 23-1, 66). The mere fact that the actual word "commissions" may not appear in the agreements would not prohibit Defendants from pursuing their claims in Counts IV and V. Defendants are only required to allege sufficient facts to plausibly state a claim for relief, and they have done so in Counts IV and V. Therefore, Moving Parties' motion to dismiss the claims in Counts IV and V is denied.

## CONCLUSION

Based on the foregoing analysis, Moving Parties' motion to dismiss the claim brought against Millard in Count I of the counterclaim and third-party complaint is granted, and the motion to dismiss the claim brought against Preferred in Count I of the counterclaim and third-party complaint is denied. Moving Parties' motion to dismiss the claims in Count III of the counterclaim and third-party complaint is granted. Moving Parties' motion to dismiss Counts IV and V of the counterclaim and third-party complaint is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 17, 2015