# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PREFERRED LANDSCAPE AND LIGHTING, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 C 1695 |
| JOHN ALBAN, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| JOHN ALBAN, et al. | ) ) | |
| Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MILLARD PREFERRED LANDSCAPE AND LIGHTING, INC., | ) ) ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

Defendants John Alban (Alban), Mark Metzger (Metzger), Darryl Cook

(Cook), and Scott Wiatrek (Wiatrek) were allegedly shareholders in Renaissance Industries, Inc. (Renaissance) d/b/a Preferred Landscape and Lighting, which operated a landscaping and lighting business (Business). In December 2011, Defendants allegedly sold their interest in Renaissance to Preferred Landscape Acquisition, LLC (Acquisition Company) pursuant to the terms of an Asset Purchase Agreement (Purchase Agreement). Plaintiff/Counter-Defendant Preferred Landscape and Lighting, LLC (Preferred) is allegedly the successor-in-interest to the Acquisition Company, and Third-Party-Defendant Millard Preferred Landscape and Lighting, Inc. (Millard) is allegedly the sole member of Preferred.

The Purchase Agreement allegedly contained non-competition agreements (Non-Competition Agreements) and non-solicitation agreements (Non-Solicitation Agreements). In addition, Defendants allegedly signed employment agreements (Employment Agreements) and accompanying confidentiality and non-competition agreements (Individual Non-Competition Agreements) limiting their employment for a certain term following the sale. According to Preferred, after Defendants sold Renaissance to Preferred, in violation of the Employment Agreements, Non-Competition Agreements, and Non-Solicitation Agreements, Defendants formed a competing business and proceeded to divert customers away from Preferred and to interfere with Preferred's relationships with its vendors, customers and employees.

Preferred includes in its amended complaint breach of contract claims based on an alleged breach of the Purchase Agreement (Count I), a rescission claim (Count II), breach of contract claims based on an alleged breach of the Employment

2

Agreements (Count III), breach of contract claims based on an alleged breach of the Individual Non-Competition Agreements (Count IV), and Illinois intentional interference with economic advantage claims (Count V).

Defendants answered the complaint and filed a counterclaim and third-party complaint against Preferred and Millard. Defendants contend that the Purchase Agreement required Preferred to make earn-out payments to Defendants in the event that certain Earnings Before Interest, Taxes, Depreciation and Amortization (EBITDA) targets were met by Preferred. Preferred allegedly made certain decisions in order to avoid the triggering of earn-out payments. Preferred allegedly failed to adequately staff the Business and took other actions that caused the Business to operate poorly. Preferred and Millard also allegedly maintained multiple sets of financial records and did not provide accurate financial information regarding the Business to Defendants.

Defendants include in the counterclaim and third-party complaint breach of contract claims brought against Preferred and Millard based on an alleged breach of the Purchase Agreement (Count I), a breach of contract claim brought against Preferred based on an alleged breach of Alban's employment agreement (Alban Employment Agreement) (Count II), a breach of contract claim brought against Preferred based on an alleged breach of Metzger's employment agreement (Metzger Employment Agreement) (Count III), a breach of contract claim brought against Preferred based on an alleged breach of Wiatrek's employment agreement (Wiatrek Employment Agreement) (Count IV), and a breach of contract claim brought against

Preferred based on an alleged breach of Cook's employment agreement (Cook Employment Agreement) (Count V). Preferred and Millard moved to dismiss the claims brought in Counts I, III, IV, and V of the counterclaim and third-party complaint, and on December 17, 2015, the court granted in part and denied in part the motion. Defendants now move to dismiss all claims brought against them by Preferred in the amended complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

**DISCUSSION**

I.  Breach of Purchase Agreement Claims (Count I)

Defendants contend that the claims in Count I should be dismissed.  For a breach of contract claim brought under Illinois law, a plaintiff must establish: (1) that there was "a valid and enforceable contract," (2) that there was "substantial performance by the plaintiff," (3) that the defendant breached the terms of the contract, and (4) that there was a "resultant injury to the plaintiff."  *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).  Defendants contend that Preferred has failed to allege that Defendants breached the terms of the Purchase Agreement.  Defendants are only able to make such an argument by disregarding several of the explicit allegations in the amended complaint.   Preferred specifically alleges that Defendants were bound by the Non-Competition Agreements and Non-Solicitation Agreements that were included in the Purchase Agreement.  (A. Compl. Par. 17).  Preferred further alleges certain limitations placed upon Defendants by the Non-Competition Agreements and Non-Solicitation Agreements.  (A Compl. Par. 17).  Preferred has attached a copy of the Purchase Agreement to the amended

5

complaint and thus it can be considered by the court when ruling on the instant motion. Fed. R. Civ. P. 10(c). In the Purchase Agreement, Defendants agreed "[n]ot to engage, directly or indirectly, in the" business of providing professional landscaping and lighting services and related services "within a fifty (50) mile radius of San Antonio, Texas or within a fifty (50) mile radius of the location of any of [Preferred's] customers at which [Renaissance] performed services within the twelve (12) month period prior to the Closing Date. . . ." (PA RecA, Par. 14(g)). Preferred alleges that Defendants breached the limitations in the Non-Competition Agreements without legal justification by starting up competing businesses and diverting businesses from Preferred's customers. (A. Compl. Par. 21-26). In the Purchase Agreement, Defendants also agreed to "not, directly or indirectly, solicit, contact, divert, interfere with or hire away from, or attempt to solicit, contact, divert, interfere with, or hire away from [Preferred], any person, firm, corporation or other entity that . . . is a distributor, supplier, customer, or client of [Renaissance] prior to the Closing date." (PA Par. 14(h)). Not only does Preferred allege generally that Defendants solicited Preferred's customers in violation of Purchase Agreement, Preferred specifically names some of the customers that were allegedly improperly solicited. (A. Compl. Par. 23-25). Preferred thus has alleged sufficient facts plausibly suggesting that Defendants breached the terms of the Purchase Agreement. Defendants attempt to argue that they somehow did not breach the terms of the Purchase Agreement, contending that they operated competing businesses that were outside the geographical limits set forth in the Purchase Agreement and did not

6

engage in solicitations that violated the Purchase Agreement. However, Defendants improperly delve beyond the facts in the amended complaint in presenting such an argument and it is premature to assess the merits of Preferred's claims at this juncture. Therefore, Defendants' motion to dismiss the claims in Count I is denied.

II. Rescission Claim (Count II)

Defendants argue that the rescission claim must be dismissed because the parties cannot be restored to the *status quo ante*. Defendants point out that Preferred alleges that the parties cannot be returned to their exact positions before the Purchase Agreement. (A . Compl. Par. 39). Defendants are correct that generally, under Illinois law, the rescission of a contract entails placing the parties in "their positions existing when the contract was made." *Int'l Ins. Co. v. Sargent & Lundy*, 609 N.E.2d 842, 852-53 (Ill. App. Ct. 1993); *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942 (Ill. App. Ct. 2010)(stating that "[g]enerally, rescission means the cancelling of a contract so as to restore the parties to their initial status")(internal quotations omitted)(quoting *Puskar v. Hughes*, 533 N.E.2d 962 (Ill. App. Ct. 1989)). However, there is a limited exception to that general rule. *Int'l Ins. Co.*, 609 N.E.2d at 852-53. A return to the *status quo ante* "will not be required when restoration has been rendered impossible by circumstances not the fault of the party seeking rescission, and the party opposing the rescission has obtained a benefit from the contract." *Id.* Thus, Preferred is not precluded from pursuing a rescission claim merely because the parties may not be able to be returned to the status quo. The

7

court notes, however, that in such a situation, in order to prevail on a rescission claim, a plaintiff such as Preferred must be willing to take the necessary steps to reimburse the defendant for benefits received by the plaintiff. *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007). Thus, Preferred will need to be amenable to taking the necessary steps to prevail on its rescission claim.

Defendants also argue that Preferred cannot pursue a rescission claim because Preferred has not joined the Acquisition Company or Renaissance as a party in this action. Defendants point to no controlling precedent that would preclude Preferred from pursuing its rescission claim as a successor-in-interest to the Acquisition Company as alleged in the amended complaint. To the extent that Defendants can show any legal deficiency in the transfer between Preferred and the Acquisition Company, such evidence would be beyond the pleadings. Nor have Defendants provided sufficient justification to require joinder of Renaissance in this case.

Defendants also argue that it will be impossible for Preferred to return certain intangible benefits that Preferred received when it purchased Renaissance. While Defendants may present such arguments at the summary judgment stage, it is premature to delve beyond the pleadings at this juncture. Therefore, Defendants' motion to dismiss the rescission claims (Count II) is denied.

III. Breach of Employment Agreement Claims (Counts III-IV)

Defendants argue that the Employment Agreements and Individual Non-

Competition Agreements incorporated into the Employment Agreements have expired and are unenforceable. Defendants point to a portion of the Employment Agreements that provides that restrictive covenants shall remain in force "for so long as Employee is employed by the Company." (Mem. Dis. 6). However, such a provision merely makes clear that the Non-Competition Agreements and Non-Solicitation Agreements remained in effect while the employee remained with Preferred. Defendants point to no terms in the Employment Agreements that would negate the explicit statement in the Individual Non-Competition Agreements that the employee agreed to be bound by such restrictions "while he is employed by the Company and for a period of five (5) years following the termination of Employee's employment." (INC Par. 3). Nor have Defendants offered any reasonable rationale as to why the parties would have contemplated that such non-competition provisions would end at the termination of employment since they would be most applicable after such termination.

Defendants also contend that the Individual Non-Competition Agreements are unenforceable as a matter of public policy. In order for a non-competition agreement to be enforceable under Illinois law, it must contain reasonable restrictions, based on the "facts and circumstances of the particular case." *Liautaud v. Liautaud*, 221 F.3d 981, 986-87 (7th Cir. 2000)(stating that the terms (1) "must not be greater than necessary to protect" the party seeking such a restriction, (2) "must not be oppressive to" the restricted party, and (3) "must not be injurious to the general public"). In the instant action, the record does not indicate that Defendants are unsophisticated

parties. Although Defendants admittedly entered into the various agreements with Preferred in exchange for compensation, Defendants now argue that the terms "are too broad and overreaching" and "[t]here is simply no justification for" imposing the agreed upon obligations upon Defendants. (Reply 2). The public policy in this instance supports ensuring that those that make contractual promises honor such promises. The Individual Non-Competition Agreements are reasonably limited in time and geographical scope in order to protect the necessary interests at stake. Defendants have not shown that such terms are overly harsh to Defendants or prevent them from earning a livelihood. Such terms merely serve to prevent Defendants from moving back into the same geographical area and stealing Preferred's customers as is alleged by Preferred in this case.

Defendants also contend that Alban was fired only 15 months after he signed one of the Individual Non-Competition Agreements and that he has not received adequate consideration for agreeing to the terms of the agreement. Whether or not the terms of the agreements between Preferred and Alban ultimately turned out to be financially advantageous to Alban is not dispositive in determining whether the agreements at the outset were unenforceable on their face as a matter of public policy. In addition, while certain Illinois courts have held that "a promise of continued employment may be an illusory benefit where the employment is at will," *Brown & Brown, Inc. v. Mudron*, 887 N.E.2d 437, 440 (Ill. App. Ct. 2008), Preferred alleges in this case that Alban was not an at-will employee. The exhibits to the amended complaint indicate that Alban signed an employment agreement with a

three-year guaranteed term of employment. (A Comp. Ex. 2a). Preferred also alleges that Alban and other Defendants were paid millions of dollars for their business, indicating that consideration was provided to Alban to form a binding agreement. (A. Compl. Par. 1, 3, 14). To the extent that Defendants dispute facts concerning the consideration given to support any of the agreements at issue in this case, such arguments involve an assessment of facts beyond the pleadings. Defendants have not shown that the Individual Non-Competition Agreements are unenforceable. Therefore, Defendants' motion to dismiss the breach of Employment Agreement claims (Count III) and breach of Individual Non-Competition claims (Count IV) is denied.

IV. Illinois Intentional Interference with Economic Advantage Claims

Defendants move to dismiss the Illinois intentional interference with economic advantage claims, contending that such claims are barred by the economic loss doctrine and the competitor's privilege defense. The economic loss doctrine, which is also known as the *Moorman* doctrine under Illinois law, "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012)(citing *Moorman Manufacturing Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. 1982)). Defendants contend that Preferred is seeking to recover purely monetary damages for alleged contractual breaches. However, under Illinois law certain intentional torts such as intentional interference with economic advantage claims are not limited by

11

the economic loss doctrine. *See Integrated Genomics, Inc. v. Kyrpides*, 2010 WL 375672, at *14 (N.D. Ill. 2010)(stating that "[t]he *Moorman* doctrine, which bars tort recovery for purely economic losses, does not apply to actions for tortious interference with prospective economic advantage or breach of fiduciary duty"); *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352 (Ill. 1990)(noting that "[s]ince *Moorman*, the appellate court has allowed recovery of economic losses in tort for intentional interference with contract and for intentional interference with prospective business advantage"). Thus, the economic loss doctrine does not bar the intentional interference with economic advantage claims in this case.

Defendants also contend that the intentional interference with economic advantage claims are barred by the competitor's privilege. Under Illinois law, parties who compete in commerce "are privileged to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1019 (Ill. 2008)(stating that "[t]he privilege to compete does not, however, encompass the use of improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement"). While Defendants may pursue such a defense in this action, they have not shown that they are entitled to prevail upon such a defense based upon a motion to dismiss the amended complaint at this stage. It is premature at this juncture to evaluate the merits of such a defense. Therefore, Defendants' motion to dismiss the intentional

interference with economic advantage claims (Count V) is denied.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 11, 2016